

FILED & ENTERED

MAY 01 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>ARTURO GONZALEZ,<br><br>                                         Debtor.<br>──────────────────────────<br>WESLEY H. AVERY, Chapter 7 Trustee,<br><br>                               Plaintiff,<br><br>    v.<br><br>ARTURO GONZALEZ,<br><br>                               Defendant. | Case No. 2:15-bk-25283-RK<br><br>Chapter 7<br><br>Adv. No. 2:16-ap-01037-RK<br><br>**MEMORANDUM DECISION ON DEBTOR ARTURO GONZALEZ'S MOTIONS TO REVISE OR VACATE DOCKET NO. 124**<br><br>**<u>Vacated Hearings</u>**<br><br>Date:  April 30, 2024<br>Time:  1:30 p.m. |

        Pending before the court in this adversary proceeding are the motions of Debtor

Arturo Gonzalez, defendant in this adversary proceeding, to revise Docket No. 124,

Docket Nos. 250, 251, 256, 259 and 260, filed on August 7, 2023, August 9, 2023,

August 28, 2023 and September 1, 2023 and to vacate Docket No. 124 for "fraud on the

court," Docket No. 247, filed on August 3, 2023.[1]   For his motions, Debtor relies upon

─────────────────────────
[1]  References to Docket Entries are to the docket entries in this adversary proceeding unless noted
otherwise, such as in the main bankruptcy case.

Federal Rule of Bankruptcy Procedure 9024 that makes Federal Rule of Civil Procedure 60(b)(1) and (3) and (d)(3) applicable to this adversary proceeding.  (In his motions to revise Docket No. 124, Debtor did not cite any legal authority for his motions, but since he is seeking relief from judgment based on the court's revision of an official hearing transcript, which was mistaken, the court assumes that he is seeking relief from judgment under Federal Rule of Civil Procedure 60(b)(1) for mistake of fact or law by the court.)

Federal Rule of Bankruptcy Procedure 9024 states:

Rule 60 F.R.C.P. applies in cases under the [Bankruptcy] Code except that (1) a motion to reopen a case under the Code or for reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by §1144, § 1230, or § 1330.  In some circumstances, Rule 8008 governs postjudgment motion practice after an appeal has been docketed and is pending.

The general rule of Federal Rule of Bankruptcy Procedure 9024 making Federal Rule of Civil Procedure 60 in cases under the Bankruptcy Code applies to Debtor's motions as the express exceptions in Rule 9024 do not apply.

Federal Rule of Civil Procedure 60(b)(1) and (3) states in relevant part:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1)     mistake, inadvertence, surprise, or excusable neglect;

\*\*\*

(3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

\*\*\*\*

Regarding a motion for relief from judgment based on mistake, the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) has recognized that a court has the

discretion to correct a judgment for mistake or inadvertence, either by counsel or by the court itself. *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004).

Regarding the burden of proof for a Federal Rule of Civil Procedure 60(b)(3) motion for fraud, the Ninth Circuit has stated:

> "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Machinery, Inc*., 206 F.3d 874, 880 (9th Cir.2000). "Federal Rule of Civil Procedure 60(b)(3) require[s] that fraud ... not be discoverable by due diligence before or during the proceedings." *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir.1991).

*Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004).

Moreover, pursuant to Federal Rule of Civil Procedure 60(c)(1), motions under Federal Rule of Civil Procedure 60(b)(1) or (3) must be made within a reasonable time and no more than a year after the entry or judgment or order or the date of the proceeding.

Federal Rule of Civil Procedure 60(d)(1) and (3) provide in relevant part:

> This rule does not limit a court's power to:
>
> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
>
> ***
>
> (2) set aside a judgment for fraud on the court.

Regarding an independent action for relief from judgment under Rule 60(d)(1), the United States Supreme Court in *United States v. Beggerly*, 524 U.S. 38 (1998) stated that there is no time limit for such independent actions, but they "must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata. *Id.* at 46, *citing and quoting, Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250

1  (1944).

2          Docket No. 124 is the Bankruptcy Noticing Center's Certificate of Service of the

3  court's Findings of Fact and Conclusions of Law after Trial on (1) the Sixth Claim for

4  Relief in the Complaint to Revoke the Debtor's Discharge for Fraud under 11 U.S.C. §

5  727(d)(1); and (2) the Seventh Claim for Relief to Revoke the Debtor's Discharge for

6  Fraudulent Acquisition of Estate Assets under 11 U.S.C. § 727(d)(2), filed on March 29,

7  2019.  The court's findings of fact and conclusions of law in this adversary proceeding

8  were filed and entered on March 27, 2019 as Docket No. 123.  By separate judgment

9  filed and entered on April 16, 2019 (Docket No. 129), the court based on its findings of

10  fact and conclusions of law (Docket No. 123) entered a final judgment in favor of the

11  trustee and against Debtor on the trustee's sixth and seventh claims for relief to revoke

12  Debtor's discharge under 11 U.S.C. §§ 727(d)(1) and (2).  Presumably, Debtor seeks by

13  his motions to revise or vacate the court's findings of fact and conclusions of law and

14  judgment in this adversary proceeding rather than the certificate of service itself.  On

15  June 7, 2019, Debtor filed a motion to alter and amend the judgment in this adversary

16  proceeding (Docket No. 145), which was denied by the court for lack of notice by order

17  filed and entered on June 19, 2019 (Docket No. 152).  On July 8, 2019, Debtor filed a

18  second motion to alter and amend the judgment in this adversary proceeding (Docket

19  No. 159), which was denied by the court by order and memorandum decision filed and

20  entered on August 23, 2019 (Docket Nos. 169 and 170).  While Debtor's current

21  motions expressly relate to Docket No. 124, which was the notice of the court's findings

22  of fact and conclusions of law, the judgment or final order that was based on the

23  findings of fact and conclusions of law was the court's judgment, Docket No. 129, filed

24  and entered on April 16, 2019, but that judgment was not the final judgment in this

25  adversary proceeding as Debtor filed motions to alter and amend the judgment, and the

26  final order denying those motions was the court's final order on the motions to alter or

27  amend judgment filed and entered on August 23, 2019 (Docket Nos. 169 and 170).

28  Presumably, Debtor by his current motions seeks relief from the court's final judgment in

1   its order of August 23, 2019 (Docket No. 170).

2       On September 6, 2019, Debtor filed a notice of appeal of the court's order

3   denying his motions to amend or alter judgment (Docket No. 173), but his appeal was

4   dismissed for lack of prosecution by the United States District Court by an order filed

5   and entered on June 26, 2020 (*In re Arturo Gonzalez*, No. 2:19-cv-07778-JVS).  The

6   District Court's order dismissing Debtor's appeal was filed and entered on the docket of

7   this adversary proceeding on July 10, 2020 (Docket No. 192).

8       On September 6, 2019, Debtor also filed another motion to alter and amend the

9   judgment in this adversary proceeding (Docket No. 177), which was denied by the court

10  for lack of jurisdiction due to pendency of Debtor's appeal in the District Court by order

11  filed and entered on September 12, 2019 (Docket No. 181).

12      In his motions to revise judgment, Debtor now moves pursuant to Federal Rule of

13  Bankruptcy Procedure 9024, making applicable to this bankruptcy case Federal Rule of

14  Civil Procedure 60(b)(3), to revise Docket No. 124, the certificate of notice of the court's

15  findings of fact and conclusions of law in this adversary proceeding, on grounds of

16  mistake due to a revision of a transcript of a hearing in this adversary proceeding on

17  January 12, 2018, that is, Debtor requests that the final decision be changed to reflect

18  the transcript revision.  See, e.g., Motion to Revise, Docket No. 259 at 1.

19      In his motion to vacate Docket No. 124, Debtor now moves pursuant to Federal

20  Rule of Bankruptcy Procedure 9024, making applicable to this bankruptcy case Federal

21  Rule of Civil Procedure 60(b)(3), to vacate Docket No. 124 on grounds of "Fraud upon

22  the Court" by actions of his former bankruptcy attorney and the Chapter 7 Trustee.

23  Motion to Vacate, Docket No. 247 at 1-31.

24      On April 15, 2024, the trustee filed his opposition to these motions.  Docket No.

25  283.  The trustee opposes the motions because: (1) they are "unintelligible and are

26  nothing more than codswallop;" (2) they seek reconsideration of a final order without

27  cause; (3) they do not meet the pleading standard of Federal Rule of Civil Procedure

28  8(a); and (4) they are without evidentiary foundation.  Docket No. 283 at 1-2.

Having considered these motions of Debtor, pursuant to Local Bankruptcy Rule 9013-1(j)(3), and the trustee's opposition thereto, on April 24, 2024, the court issued an order determining that oral argument on the motions is not necessary, dispensed with oral argument, vacated the hearings on the motions rescheduled for April 30, 2024 and took the motions under submission.  Docket No. 284.  Having taken the motions under submission, the court now rules as follows.

**Motions to Revise**

The motions to revise Docket No. 124 (Docket Nos. 250, 251, 256, 259 and 260) appear to be duplicates and request the court to revise Docket No. 124 based on a revision of the transcript of a hearing in this adversary proceeding on January 12, 2018.

The motions to revise Docket No. 124 should be denied because they are based on Debtor's claim of mistake in fact or law by the court based on the change in the official hearing transcript of January 12, 2018, but are untimely as the judgment on the trustee's claims for revoking Debtor's discharge became final upon entry of the order denying Debtor's motion to alter or amend the judgment in the adversary proceeding on August 23, 2019 (Docket No. 170), roughly four years before Debtor filed the motions to revise Docket No. 124 were filed in August and September 2023.  While Debtor filed an appeal of this final order or judgment on September 6, 2019 and the court lacked jurisdiction to consider a Rule 60(b)(1) motion for relief from judgment during the appeal, Debtor could have filed a post-appeal motion for relief from judgment once the appeal was dismissed on June 20, 2020, which was more than three years before he filed his current motions for relief from judgment to revise Docket No. 124.  *In re Intermagnetics American, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991) (appellate leave not required for Rule 60(b) motion before a trial court for cases already reviewed on appeal) (citations omitted).  Under Federal Rule of Bankruptcy Procedure 9024, making Federal Rule of Civil Procedure 60(c)(1) applicable to this adversary proceeding, a motion for relief from judgment based on mistake under Federal Rule of Civil Procedure 60(b)(1) must be brought within a reasonable time and no more than one year after entry of

judgment.  Debtor's motions to revise Docket No. 124 filed in August and September 2023 were filed in 2024 way more than one year after entry of judgment on August 23, 2019, that is, about four years afterwards, which is not a reasonable time as required by Federal Rule of Civil Procedure 60(b)(1) and (c).  The motions to revise Docket No. 124 should be denied as untimely.

Assuming for the sake of argument that the motions to revise Docket No. 124 are timely, they should be also denied because any mistake in fact from the change in the hearing transcript of January 12, 2018 is not material to the decision as there is substantial evidence as described in the findings of fact and conclusions of law for the decision that are unaffected by the one minor change in the hearing transcript that the court has ordered.

The transcript of the trial in the adversary proceeding on January 12, 2018 setting forth Debtor's testimony at pages 87, line 17 to page 88, line 3 read as follows:

> . . . I filed bankruptcy October 5, 2015. I missed my first meeting of creditors. My second meeting of creditors, so from October 15th to twen -- to December 15, 2015 there was nothing that told me not to do any expenses. No -- because my attorney didn't tell me. The trustee didn't know. So I felt free to spend necessarily. And as of December 15th when I did go to the meeting of creditors, which was my actual meeting of creditors but it was a second meeting of creditors, that's when the trustee said that not to expend money. And my attorney said -- well, not my attorney. The fill-in attorney said, "I think he has a right to do that."

Docket No. 94 at 87:17-88:3.

On July 14, 2022, Debtor filed a motion for reconsideration of a prior order regarding correction of the hearing transcript (Docket No. 610 in the main bankruptcy case), requesting a correction in the transcript to add the word "don't" to the sentence that "The fill-in attorney said, 'I don't think he has a right to do that.'"  The court in its order filed and entered on September 20, 2022 (Docket No. 652 in the main bankruptcy case) granted this specific request, allowing the transcript to be corrected to add the word "don't."

In his motion to revise Docket No. 124, Debtor requests that the final decision

1   reflect the change in the transcript.  While Debtor refers to Docket No. 124, he

2   apparently means the findings of fact and conclusions of law, which are in Docket No.

3   123, for which Docket No. 124 provided notice to the parties.  The change in the hearing

4   transcript would mean that the court's finding of fact no. 13 as stated on page 8, lines 27

5   to page 9, line 4, that "Debtor admitted that he knew from speaking to his appearance

6   attorney that Trustee had a right to instruct him not to expend money belonging to the

7   bankruptcy estate" was partially incorrect and would have to be corrected as changing

8   the transcript to add the word "don't" indicates that the "fill in" or appearance attorney

9   did not advise in his opinion to Debtor that the trustee had a right to instruct him

10  (Debtor) not to expend money belonging to the bankruptcy estate.  Therefore, the

11  finding of fact no. 13 was partially incorrect in stating that Debtor admitted he was told

12  by the appearance attorney that the trustee had the right to tell him not to expend

13  money belonging to the bankruptcy estate.  Perhaps the appropriate thing to do in these

14  circumstances would be to delete that part of finding of fact no. 13.  However, even if

15  that specific finding were deleted, this would not change the court's decision that there

16  is substantial evidence as described in the court's findings of fact and conclusions of

17  law to support the decision that was made.  The court's findings of fact and conclusions

18  of law nos. 1 to 52 detail Debtor's failures to accurately and completely list his assets on

19  his original and amended bankruptcy schedules and in his testimony at the meetings of

20  creditors in this case and Debtor's failures to report and deliver property of the

21  bankruptcy estate to the trustee and do not change the court's decision that the trustee

22  met his burden of proving by a preponderance of the evidence his claims to revoke

23  Debtor's discharge under 11 U.S.C. § 727(d)(1) and (2).  The erroneous factual finding

24  of the Debtor's admission that his appearance attorney told him that the trustee had the

25  right to instruct him (Debtor) not to expend estate assets was a minor factual finding that

26  even if omitted, would not affect the decision by the court and the outcome of the case,

27  and thus, its deletion would be non-material.

28          For the foregoing reasons, the court will deny Defendant's motions to revise

1  Docket No. 124 because they are untimely and they are based on an erroneous finding

2  of fact that is non-material.

3  **Motion to Vacate**

4  In his motion to vacate Docket No. 124, Debtor contends that the judgment in this

5  adversary proceeding should be vacated for "fraud on the court" by actions of the

6  Chapter 7 Trustee and Debtor's former bankruptcy attorney in this case.  Motion to

7  Vacate, Docket No. 247 at 14-31.

8  The Ninth Circuit has recognized that a federal court may vacate a judgment for

9  fraud on the court based on its inherent powers to protect its integrity.  *In re Levander,*

10  180 F.3d 1114, 1118-1119 (9th Cir. 1999).  The Ninth Circuit in *Levander* observed:

11  "When a court vacates a judgment obtained by fraud, it not only rids itself of the

12  defilement caused by the fraud, but also restores the balance and fairness between the

13  parties by removing the benefit gained by the party that committed the fraud."  *Id.* at

14  1119.  To determine whether there has been fraud on the court, the Ninth Circuit has

15  adopted the following test:

16  "Fraud upon the court" should, we believe, embrace only that species of fraud
   which does or attempts to, defile the court itself, or is a fraud perpetrated by
17  officers of the court so that the judicial machinery can not perform in the usual
   manner its impartial task of adjudging cases that are presented for adjudication.
18

19  *In re Levander,* 180 F.3d at 1119 (citations omitted).

20  Regarding the trustee, Debtor contends: "In this Bankruptcy Case, the Trustee

21  got decisions in his favor by cheating and by not properly doing his duty as a Trustee."

22  Motion to Vacate, Docket No. 247 at 3 (internal page citation at 2).[2]   As to his argument

23  that there was cheating by the trustee, Debtor contends the trustee committed a fraud

24  upon the court in his declaration in support of his (trustee's) motion for turnover of funds

25  in this adversary proceeding, Docket No. 2, filed on January 22, 2016.  Motion to

26  Vacate, Docket No. 247 at 16-20.  As to his argument that the trustee did not properly

27

28
---
[2]  Pages 2 and 3 of the Motion to Vacate, Docket No. 247, are switched around as shown on the case docket for the adversary proceeding.

do his duty as trustee, Debtor contends the trustee committed a fraud on the court by in filing his (the trustee's) adversary complaint on January 21, 2016 (Docket No. 1), which filed in conjunction with the trustee's allegedly false declaration in support of the turnover motion filed on January 22, 2016.  Motion to Vacate, Docket No. 247 at 23-30.

In his motion to vacate Docket No. 124, Debtor cites Federal Rule of Civil Procedure 60(b)(3) and 60(d)(3) as his legal authority for his motion.  Motion to Vacate, Docket No. 247 at 3 (internal page citation at 2).  To the extent that Debtor in his Motion to Vacate is moving for relief from judgment under Federal Rule of Civil Procedure 60(b)(3) for fraud, the motion should be denied because it was not timely made within the one year time limit for Rule 60(b)(3) motions set forth in Rule 60(c)(1).  As discussed previously, the final judgment in this adversary proceeding was filed and entered on August 23, 2019 (Docket No. 170), and Debtor's motion to vacate the final judgment in this adversary proceeding was filed on August 3, 2023, about four years after the date of entry of final judgment.

To the extent that the Motion to Vacate is considered on the merits under Rule 60(b)(3), as discussed below, Debtor has failed to meet his burden to prove fraud by clear and convincing evidence under the standard recognized by the Ninth Circuit in *Casey v. Albertson's Inc.,* 362 F.3d at 1260 as cited previously.  To the extent that Debtor's Motion to Vacate is considered an independent action for relief based on fraud on the court pursuant to Federal Rule of Civil Procedure 60(d)(1) and (3), as discussed below, he has not shown that this is a case of "injustices . . .sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata."  *United States v. Beggerly*, 524 U.S. at 46, as he has not shown any fraud on the court by a preponderance of the evidence, let alone, by clear and convincing evidence, for the court to exercise its discretion to relieve him from the final judgment in this adversary proceeding.

Debtor's argument that the trustee committed fraud on the court is specifically that the trustee made a false declaration in support of the turnover motion which later

the court granted in part.  Motion to Vacate, Docket No. 247 at 16-23.  The statement in

the trustee's declaration that Debtor takes issue was as follows:

> 5.  At the December 15, 2015 creditors meeting, Debtor appeared and I
> questioned him.  He testified that there were no errors or omissions in his
> schedules, and that he signed his schedules after he read them, and that they
> were true and correct.  He acknowledged he filed his amended schedules only
> one day earlier on December 14, 2015.  I questioned the Debtor about his
> amended schedules.  I asked if there were any sales pending in Long Beach
> Realty, other than Banning, Oceanside, and W.L. Street.  Debtor replied there
> were none.  I told the Debtor that I would be shutting down Long Beach Realty
> and taking the proceeds.  I specifically advised the Debtor that he was only
> entitled to $1,500.00 exemption in Long Beach Realty's assets and the rest were
> non-exempt and belonged to the Estate.  The Debtor stated on the record that he
> agreed.  I instructed the Debtor not to dissipate any of the assets of Long Beach
> Realty.  The Debtor testified that he was 10 months behind on the mortgage
> payments.

Declaration of Wesley H. Avery, Motion by the Plaintiff and Chapter 7 Trustee for

Turnover of Funds, etc., Docket No. 2 at 18 (internal page citation at 16), cited in Motion

to Vacate, Docket No. 247 at 19-21.

Debtor argues that the statement in the trustee's declaration that "I instructed the

Debtor not to dissipate any of the assets of Long Beach Realty" was false because it

was incomplete and inconsistent with the recording of the meeting of creditors on

December 15, 2015, which was played at the hearing in this adversary proceeding on

January 11, 2018, and later transcribed as Docket No. 95, filed on March 21, 2018.

Motion to Vacate, Docket No. 247 at 16-19.  The relevant portion of official transcript of

the hearing before the court in this adversary proceeding on January 11, 2018 during

which a recording of the meeting of creditors in this bankruptcy case on December 15,

2015 was played, is as follows as modified by the court's order in the bankruptcy case

granting in part and denying in part Debtor's motion to modify the transcript (Docket No.

601 in the main bankruptcy case):

> UNIDENTIFIED VOICE [TRUSTEE AVERY]: I would ask you not to spend any
> money in the bank accounts of the corporate [inaudible].  Ok?  Because if you
> don't take an exemption, your house is in play.  So you're going to have to
> defend your house and you won't be able to defend both.  You have to defend
> one.

MR. GONZALEZ:  As far as the house [inaudible]

UNIDENTIFIED VOICE [TRUSTEE AVERY]:  The house [inaudible] the corporation, you can't keep them both.  Your attorney will be able to advise you.  So I'm saying, don't dissipate the money and if you do dissipate the month and then you just seem um get claim your house as exempt, we'll seek a setoff.  Alright?  Of the money you took out of the corporation.  Alright?  In other words, if I told you not spend any money in the corporation but you go ahead and do so anyway, alright, then I will seek to set that off against your homestead [inaudible] your attorney.

Order Granting in Part and Denying in Part Debtor's Motion to Modify the Transcribe the 341 Meeting of Creditors Held on 12-15-1[5], Main Bankruptcy Case Docket No. 601, filed and entered on June 15, 2022, at 2-3.  Debtor argues that the trustee's declaration was false because he omitted the statements he made at the meeting of creditors that if Debtor dissipated the funds as the trustee told him not to, the trustee would seek to set off the dissipated funds against any homestead exemption that Debtor claimed.  Motion to Vacate, Docket No. 247 at 21-22.

It was Debtor's understanding that the statements that the trustee made to him at the meeting of creditors on December 15, 2015 gave him (Debtor) permission to dissipate the funds, saying that any dissipated funds would be set off against any homestead exemption as stated in the Motion to Vacate in quoting Debtor's testimony at the hearing on January 12, 2018 (Docket No. 94):

"Good question, Your Honor.  If you – if – I want you to do – if you re – if you recall the audio he gave me an out.  He gave me an out.  And this is what he said.  He said, "Do not spend it, however, if you do there's going to be a setoff."  So what does that say, Your Honor?  He gave me the okay.  And if it would be a setoff it wouldn't be fraud.  It would be a setoff.  Just go back and listen to the audio.  It will be a setoff, not fraud.  He didn't say it would be fraud.  He said it will be a setoff.  And I know what a seoff.  A setoff is a legal . . ."

Motion to Vacate, Docket No. 247 at 18-19, *citing and quoting,* Transcript of Hearing on January 12, 2018 at 160, lines 11-21.  Debtor argues that the trustee obtained a temporary restraining order from the court through his allegedly false declaration, and

therefore, in Debtor's opinion, the trustee obtained this result through cheating.  Motion to Vacate, Docket No. 247 at 23-24.

The trustee's declaration in his declaration in support of his turnover motion was not false as Debtor contends.  The trustee said in his declaration that he told Debtor not to dissipate the funds.  The fact that the trustee did not say in his declaration that if Debtor dissipated the funds, he (the trustee) would seek a setoff does not make the declaration false as the trustee never gave Debtor permission to dissipate the funds, or as Debtor argues, an "out" to go ahead to dissipate the funds.  The trustee in saying that he would seek a setoff only warned Debtor that there were consequences if Debtor went ahead to dissipate the funds as the trustee told him not to.  Apparently, Debtor heard what he wanted to hear because he wanted to spend the funds for himself, which was a dissipation of assets of the bankruptcy estate.  There was no fraud on the court in the trustee's declaration, and the trustee was entitled to turnover orders as determined by the court because Debtor claimed excessive exemptions in his personal property assets in the real estate sales commissions as set forth in the court's turnover order in Docket No. 19 and its order and findings of fact and conclusions of law allowing in part and disallowing in part Debtor's claimed personal property exemptions in Docket No. 118 and 119 in the main bankruptcy case.   Accordingly, the court will deny Debtor's motion to vacate Docket No. 124 on grounds of fraud on the court based on the trustee's declaration in support of the turnover motion for failure of showing a fraud on the court by the trustee in his declaration, whether by a preponderance of the evidence or by clear and convincing evidence.

Debtor's argument that the trustee did not properly do his duty as trustee in filing the adversary complaint is based on the allegedly false declaration in support of the turnover motion.  Motion to Vacate, Docket No. 247 at 23-30.  In Debtor's words, "Trustee brought a complaint on January 21, 2016, through a 'Fraud upon the Court' it could have been defeated by Debtor's Attorney by the evidence that was given [to Debtor's Attorney] on January 29, 2016, an email and a credit report stating that his

1  [Debtor's] debt was time barred an[d] no longer on his credit report."  Motion to Vacate,

2  Docket No. 247 at 23.

3     In the motion to vacate, Debtor quotes this email, which he wrote to his former

4  bankruptcy attorney dated January 29, 2016 as follows:

5         **Currently I owe no creditors** on my credit report, I was able to remove one of
          the last items since the company that took over the account went out of business,

6        and I disputed it and I just got a message yesterday that it was removed (see
          attachment).  Also, **I called one of the companies I owed money to (Discover)**

7        **and I asked them how come I no longer see Discover on my current credit**
          **report that I got last week, and they said it was because after 7 years they**

8        **can't collect.  I also stopped paying everyone at the same time so**
          **assuming that's why they are no longer on my credit report."**  So I think I

9        need to figure out exactly what I owe and if I don't show up, it gives me time to
          figure out what I owe,  Also, with this new information, please advise as to the

10       best way to proceed.  Let me know what you think is the next move and also,
          maybe if no creditors are on my credit report, maybe the third option is to just

11       work a payment plan to pay the tax liens without doing Bankruptcy, let me know
          what you think.  **I also have attached a report from Transunion."**

12

13

14  Motion to Vacate, Docket No. 247 at 23, quoting Email dated January 29, 2016 from

15  Debtor to his former bankruptcy attorney, Exhibit 1 to Debtor's Declaration, July 22,

16  2016, Docket No. 131 at 20.

17     In the Motion to Vacate, Debtor states that this email to his former bankruptcy

18  attorney dated January 29, 2016 was in evidence as part of Docket No. 131 at 19-20,

19  which was his declaration filed in the main bankruptcy case on July 22, 2016.  Motion to

20  Vacate, Docket No. 247 at 23.  Also, in the Motion to Vacate, Debtor states a copy of

21  the credit report can be found in the record in Docket No. 94 at 59-69, which was his

22  declaration filed in the main bankruptcy case on June 3, 2016, and in Docket No. 1571

23  at 17-27, which was his request for judicial notice filed on November 4, 2016.  *Id.*

24  According to Debtor, much fault lies with his former bankruptcy attorney: "When Trustee

25  brought a complaint, all Debtor's Attorney had to emphasized [sic] was this email stating

26  that Debtor's unsecure [sic] debtor was time barred and as proof to show the Credit

27  report, however, he didn't present this evidence until July 22nd, 2016."  *Id.*[3]  Citing his

28

---

[3]  Debtor also argues in his Motion to Vacate that his former bankruptcy attorney did not present to the

email to his former bankruptcy attorney dated January 29, 2016 and his credit report as

"Key Evidence," Debtor argues that his unsecured debts were time-barred and therefore

he was not eligible for Chapter 7 bankruptcy, and thus, the trustee's administration of

the bankruptcy estate in the bankruptcy case was improper.  Motion to Vacate, Docket

No. 247 at 26-27.

Debtor apparently argues that the trustee acted improperly in administering the

bankruptcy estate in this case after being put on notice by Debtor's email to the former

bankruptcy attorney and Debtor's credit report that Debtor was ineligible for Chapter 7

because Debtor had no enforceable unsecured debts based on expiration of collection

statutes of limitation as shown on his credit report.

Debtor apparently contends that the trustee was put on notice of the statute

expired unsecured debts by his (Debtor's) declaration filed in this case on July 22, 2016.

Debtor's declaration filed on July 22, 2016 (Docket No. 131) consisted of a five-page

declaration with an attached signature page with his manual signature and an "Exhibit

A" consisting of a fifteen page slew of emails between Debtor and his former bankruptcy

attorney.  Motion to Vacate, Docket No. 247 at 23.  The five-page text of Debtor's

declaration of July 22, 2016 addressed Debtor's intention from changing his exemptions

in this case to claim a homestead exemption.  In the text of his declaration, Debtor

stated that one of his original goals in filing this bankruptcy case was "to discharge my

unsecured obligations."  Debtor's Declaration, Docket No. 131 at 2.  In his declaration of

July 22, 2016, Debtor did not state that he had no enforceable and potentially

dischargeable unsecured debts due to expiration of the collection statute of limitations;

the only references to his unsecured creditors and the debts he owed to them were that

his original goal was to discharge his unsecured debts and that he was changing his

exemptions "to further my Chapter 13 plan that I would propose by requiring a lower

---

court the "the January 29th, 2016 key mail evidence that Debtor's debt was time-barred" until a hearing
before the court on August 17, 2016.  Motion to Vacate at 29.  The court assumes that the earliest date
that Debtor argues that the email was put on the record in this case was July 22, 2016 based on his
declaration that was filed that date.

payment to be made to the unsecured creditors."   Debtor's Declaration, July 22, 2016, Docket No. 131 at 2-4.

In Debtor's bankruptcy schedules in his bankruptcy petition filed on October 5, 2015 (Main Bankruptcy Case Docket No.1), he listed 10 creditors holding unsecured nonpriority claims with a total value of $97,045.00 and these creditors that he listed as holding unsecured nonpriority claims were Afni, Inc., Bank of America, N.A. Cach, LLC, Citibank, N.A., Discover Bank, Financial Credit Network, Southwest Credit Systems, Valley Collection Service, Wells Fargo Bank N.A. and Western Federal Credit Union. Main Bankruptcy Case Docket No. 1 at 23-25.[4]  Debtor did not indicate on his bankruptcy schedules that any of these claims were disputed by him, such as being uncollectible due to passage of time.  *Id.*

As discussed above, Debtor points to a passage he wrote in his email to his former bankruptcy attorney dated January 29, 2016 which was quoted in the Motion to Vacate that he owes no creditors on his credit report.  Email dated January 29, 2016 from Debtor to his former bankruptcy attorney, Exhibit 1 to Debtor's Declaration, July 22, 2016, Docket No. 131 at 20.  However, the credit report referenced in this email was not attached as part of Debtor's July 22, 2016 declaration, nor was the message from the creditor referenced in the email stating that an account was "removed" was attached as part of the declaration.  Debtor's Declaration, July 22, 2016, Docket No. 131.

Debtor's statements in his email to his former bankruptcy attorney that he owes no creditors on his credit report is inadmissible evidence because there is no evidentiary

---

[4]   The court takes judicial notice of Debtor's bankruptcy schedules in this case pursuant to Federal Rule of Evidence 201.  *O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955 957-958 (9th Cir. 1989) (holding appellate court may take judicial notice of records of underlying bankruptcy case); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)(stating a court may take judicial notice of its own records, specifically in other cases before it).  As one bankruptcy evidence treatise has stated, "[i]t is generally accepted that a bankruptcy judge may take judicial notice of the bankruptcy court's records." Russell, *Bankruptcy Evidence Manual*, § 201:5 (online edition November 2023 update), *citing inter alia, In re Ranieri,* 598 B.R. 450 (Bankr. N.D. Ill. 2019)(Bankruptcy court can take judicial notice of its own records, including a debtor's bankruptcy schedules) and *In re Faulkner,* 593 B.R. 263 (Bankr. E.D. Pa. 2018) (Bankruptcy court could take judicial notice of docket entries, as well as documents filed, in chapter 13 debtor-mortgagor's prior bankruptcy cases and in state court mortgage foreclosure actions, but not of facts stated in documents that might be in dispute).

1  foundation for such statements.  Debtor has not shown that he has personal knowledge

2  as required by Federal Rule of Evidence 602 that all of his unsecured debts were time-

3  barred due to expired collection statutes of limitations, and it appears that he does not

4  have such personal knowledge because in his email statement, he relied upon

5  undisclosed and inadmissible hearsay statements in an unidentified and undisclosed

6  third party credit report and in alleged telephone conversations he purportedly had with

7  unidentified representatives of two creditors,  Discover and another unnamed creditor.

8  *See also,* Federal Rules of Evidence 801 *et seq.* (hearsay rules) and 901(a) and (b)

9  (authentication rules).   (Debtor's statements in his email to his former bankruptcy

10  attorney of January 29, 2016 are also inadmissible evidence as such statements are not

11  formally part of the declaration and are otherwise unsworn.  See 28 U.S.C. § 1746.)

12  There is no factual basis based on admissible evidence in Debtor's email statements of

13  January 29, 2016 to have put the trustee on notice that he (Debtor) had no enforceable

14  unsecured debts as of the date of the filing of the declaration on July 22, 2016.  Debtor's

15  statements themselves in his January 29, 2016 email are general and do not specifically

16  address all of his unsecured creditors listed in his bankruptcy schedules, only Discover

17  and one other unnamed creditor.  In Debtor's declaration of July 22, 2016, there is no

18  admissible evidence corroborating that the collection statutes of limitations had expired

19  for all of Debtor's potentially dischargeable unsecured debts, only Debtor's say-so,

20  which is inadequate to prove anything.

21        Moreover, there was insufficient notice to the trustee of such statements made by

22  Debtor in his email of January 29, 2016 to his former bankruptcy attorney as the

23  statements were not mentioned or referred to in the text of Debtor's declaration of July

24  22, 2016 itself, that is, the document that was being filed.  That is, there was no

25  reference to Debtor's current contention that he had no enforceable and potentially

26  dischargeable unsecured debts in the body of his declaration as the only references to

27  his unsecured debts in the declaration itself were that Debtor's goal was to discharge

28  such debts and that he was changing his exemptions to lower the payments that he

1   would have to make on such debts.  There was nothing in this declaration about Debtor

2   no longer having any enforceable and potentially dischargeable unsecured debts.

3   Debtor's isolated unsworn statements in his email to his former bankruptcy attorney of

4   January 29, 2016 were obscurely buried in a slew of emails made part of Exhibit A to

5   Debtor's declaration of July 22, 2016 with nothing to draw attention to the email, even if

6   there was any evidentiary value to the statements in the email, which there is none, and

7   thus, the email was not adequate notice to the trustee that he (the trustee) was

8   administering a bankruptcy case involving no enforceable and potentially dischargeable

9   unsecured debts.  In this regard, the court notes that Debtor himself in his bankruptcy

10  schedules filed in the case did not list any of his potentially dischargeable unsecured

11  debts as disputed, contingent or unliquidated.  Schedule F – Creditors Holding

12  Unsecured Nonpriority Claims, Docket No. 1 at 23-25.  If Debtor knew or believed these

13  potentially dischargeable debts were statute expired and unenforceable, he would have

14  listed them as disputed on his bankruptcy schedules that he filed with his bankruptcy

15  petition.  This fact also undermines Debtor's argument that the trustee was put on notice

16  that he (Debtor) had no enforceable and potentially dischargeable unsecured debts as

17  of July 22, 2016.

18          Debtor further argues that a copy of his credit report was in the record as it was

19  an exhibit to his declaration filed on June 3, 2016, Docket No. 94, also put the trustee

20  on notice that he (Debtor) had no enforceable and potentially dischargeable unsecured

21  debts for this Chapter 7 bankruptcy case to have a purpose.  Debtor's declaration of

22  June 3, 2016 was submitted as his trial declaration for the contested matter of his

23  motion to convert the case to Chapter 13, and the declaration consists of 85 pages,

24  including an eight page declaration, 75 pages of exhibits, a signed signature page, and

25  a one page certificate of service.  Docket No. 94.  An eleven page copy of a credit

26  report for Debtor purportedly from Transunion dated January 27, 2016 was attached as

27  Exhibit C to the declaration.

28          Regarding the copy of his credit report attached to his June 3, 2016 declaration,

Debtor stated in this declaration:

> 45. Further, in preparing for this petition, I was informed by my counsel that there were two tax liens recorded on the property.

> 46. I was aware of one tax lien, so this was a surprise to me.

> 47. However, a copy of a recent credit report demonstrates this tax lien showing up on my property.

> 48. To the best of my knowledge, there still remain two major tax liens and several minor tax liens secured to my real property.

> 49. A copy of a recent credit report is attached upon which I base my statement. This is a true and correct copy of the document in question. Exhibit C.

Debtor's Declaration, June 3, 2016, Docket No. 94 at 5-6.

Regarding Debtor's contention that he stated on the record in his declaration of June 3, 2016 that his debts were uncollectible, he stated in the declaration as follows:

> 5.  At the time of filing of my BK Case, I was approximately 1 year behind on the mortgage payments.

> 6. In approaching the filing of the BK Case I always intended to keep my house.

> 7. The mortgage company's actions necessitated the BK Case. I believed that I could make a deal with the taxing authorities to payoff the tax liens owed, and that the other debts I owed were uncollectible due to the age of the debts.

Debtor's Declaration, June 3, 2016, Docket No. 94 at 2.

The above two passages from Debtor's declaration of June 3, 2016 were the only references to his credit report and his unsecured debts.  The credit report was only referenced in Debtor's declaration of June 3, 2016 as to the existence of a second tax lien that Debtor said that he had not known about, and Debtor did not refer to his credit report in his declaration with respect to his unsecured debts.  Debtor in the one reference to his unsecured debts stated that the other debts he owed were uncollectible due to their age, but did not cite any evidence in support of this assertion.

Debtor's June 3, 2016 declaration did not put the trustee on notice of any

purported fact that Debtor had no enforceable, or collectible, unsecured debts as Debtor

only stated his beliefs that he could make a deal with the taxing authorities to pay off the

tax liens that he owed and that the other debts he owed were uncollectible due to their

age.  Debtor in stating his belief that his other debts were uncollectible due to age cited

no evidence in support of such belief, and in his declaration, he never referred to his

credit report in stating such belief.  Debtor in this declaration only referred to his credit

report because it showed a second tax lien that he was not previously aware of.

Debtor's saying that his other debts were uncollectible due to age was conclusory and

nonspecific as he did not identify which specific debts were uncollectible in his

declaration, which is in contrast to his bankruptcy schedules on which he listed his

specific debts and did not indicate that any of those listed debts were disputed,

unliquidated or contingent due to age.  If Debtor considered his debts to be uncollectible

due to age, he could have amended his bankruptcy schedules to indicate that he

disputed them based on age, which he had not as of the date of his declaration of June

3, 2016.  Debtor stated his belief in his declaration to address the issue then presented

by his change of claimed exemptions, and not because as he now contends, the case

demanded dismissal because there was no purpose to it due to his other debts being

uncollectible.  Debtor did not state in his declaration that the case should be dismissed

because he had no collectible unsecured debts.  These circumstances indicate that

Debtor's declaration and the credit report exhibit filed on June 3, 2016 did not put the

trustee on notice of a purported fact that Debtor had no enforceable and potentially

dischargeable unsecured debts to be paid as claims in a Chapter 7 bankruptcy case.

Significantly, Debtor's argument that the trustee was put on notice by his June 3,

2016 declaration that he (Debtor) had no enforceable and potentially dischargeable

unsecured debts due to the expiration of the collection statutes of limitation of all of his

unsecured debts lacks merit because there is no evidentiary support for such argument.

Debtor has not shown that he has personal knowledge as required by Federal Rule of

Evidence 602 that all of his unsecured debts are time-barred due to expired collection

1   statutes of limitation, and it appears that he does not have personal knowledge because

2   he apparently relies upon unauthenticated and inadmissible hearsay statements in a

3   third party credit report.  See also, Federal Rule of Evidence 801 *et seq*. and 901(a) and

4   (b).  There is no factual basis based on admissible evidence in Debtor's June 3, 2016

5   declaration to put the trustee on notice that he (Debtor) has no enforceable and

6   potentially dischargeable unsecured debts.  The statements in the declaration

7   themselves are general and do not specifically address all of Debtor's unsecured

8   creditors listed in his bankruptcy schedules.  In Debtor's declaration of June 3, 2016,

9   there is no evidence corroborating that the collection statutes of limitation had expired

10  for all of Debtor's potentially dischargeable unsecured debts, only Debtor's say-so,

11  which is inadequate to prove anything.

12         Regarding Debtor's credit report attached to his June 3, 2016 declaration, the

13  notice provided by it is limited as Debtor only offered it to show that he had not

14  previously known of a second tax lien, which was shown on the credit report.  Debtor's

15  Declaration, June 3, 2016, Docket No. 94 at 5-6 and Exhibit C attached thereto.

16  Nowhere in Debtor's declaration of June 3, 2016 is any statement by him indicating that

17  he was relying upon the credit report to show that he had no collectible unsecured

18  debts.  Debtor's Declaration, June 3, 2016, at 1-8.  Thus, Debtor in his June 3, 2016

19  declaration was not asking the trustee to look at the credit report to show that he

20  (Debtor) had no collectible debts.  *Id.*   The probative value of the credit report is limited

21  as it was the statement of unknown persons who purportedly made an unspecified

22  investigation of Debtor's outstanding debts, which unauthenticated out-of-court

23  statement being offered for the truth of the matters stated therein has not been shown to

24  be based on personal knowledge of persons placed under oath, but which appear to be

25  inadmissible hearsay lacking the foundation of personal knowledge as required by

26  Federal Rules of Evidence 602, 801, 802 and 901.  Moreover, the credit report does not

27  address all of the potentially dischargeable debts that Debtor listed on his bankruptcy

28  schedules, which indicates the lack of completeness. The lack of admissible evidence

undermines Debtor's reliance on the credit report as providing notice to the trustee.

The evidence admissible in this case shows that Debtor had enforceable and potentially dischargeable unsecured debts as shown by his bankruptcy schedules listing unsecured nonpriority debts owed to creditors for which the collection statutes of limitation had not expired as of the date that he filed his bankruptcy petition on October 5, 2015.  In California, the statute of limitations for filing a lawsuit to enforce a debt from an obligation or liability based upon a written agreement is generally four years under California Code of Civil Procedure § 337 from the accrual of the obligation or liability, presumably from a failure to make payment as promised in the written agreement.

Debtor in his bankruptcy schedules listed unsecured nonpriority debts incurred within four years of the petition date of October 5, 2015, including consumer debt owed to Afni, Inc., incurred in 2014 for utility collection in the amounts of $134.00 and $122.00, consumer debt owed to Southwest Credit Systems incurred in 2013 for utility collection in the amount of $123.00 and consumer debt owed to Valley Collection Service incurred in 2012 in the amount of $194.00.  Schedule F – Creditors Holding Unsecured Nonpriority Claims, Docket No. 1 at 23-24.  Debtor's listings of these unsecured creditors and his debts owed to them incurred during the four-year collection statute of limitations, which were not marked as disputed, contingent or unliquidated, on his bankruptcy schedules are evidentiary admissions.  *Suter v. Goedert*, 396 B.R. 535, 541 (D. Nev. 2008) (citation omitted; statements made in bankruptcy schedules are executed under penalty of perjury and, when offered against debtor, are eligible for treatment as evidentiary admissions), *cited in,* Russell, *Bankruptcy Evidence Manual*, § 801:12 (online edition November 2023 update).  Debtor has not shown with admissible evidence that these potentially dischargeable unsecured debts are unenforceable based on expiration of the collection statute of limitations.

Moreover, Debtor on his bankruptcy schedules listed the Internal Revenue Service (IRS) as having a partially secured claim of $34,798.00, of which $7,966.00 was unsecured, for a debt incurred in 2011.  Schedule D – Creditors Holding Secured

Claims, Docket No. 1 at 21. Debtor has made no showing that the collection statute of limitations on the IRS unsecured claim had expired, which is normally 10 years from the date of assessment under 26 U.S.C. § 6502, and is uncollectible.

Also, because as indicated on Debtor's statement of related cases filed on October 5, 2015 (Docket No. 5), he had two prior pending bankruptcy cases that he filed in 2011 and 2012, the four year collection statute of limitations under California Code of Civil Procedure § 337 was tolled, or suspended, during the time that these bankruptcy cases were pending pursuant to 11 U.S.C. § 108(c), which for each bankruptcy case tolled the statute of limitations during the time the automatic stay was in effect, plus 30 days. Debtor filed a Chapter 13 bankruptcy case, *In re Arturo Gonzalez,* No. 2:11-bk-52799-NB Chapter 13 (Bankr. C.D. Cal.) on October 13, 2011, which was dismissed and closed on October 29, 2012, and the automatic stay was in place during this time period pursuant to 11 U.S.C. § 362, and thus, the four year collection statute of limitations was tolled, or suspended, for one year and 16 days, plus 30 days, under 11 U.S.C.§ 108(c). Debtor also filed a Chapter 13 bankruptcy case, *In re Arturo Gonzalez,* No. 2:12-bk-20930-VZ Chapter 13 (Bankr. C.D. Cal.) on March 27, 2012, which was dismissed and closed on July 31, 2013, and the automatic stay was in place during this time period pursuant to 11 U.S.C. § 362, and thus, the four year collection statute of limitations was tolled, or suspended, for another one year, four months and 4 days, plus 30 days, under 11 U.S.C.§ 108(c). *See* Federal Rule of Evidence 201.[5] Without tolling, the four year collection statute of limitations would have expired for written contractual debts incurred on or before the petition date of October 5, 2015, that is, incurred on or before October 5, 2011, but with tolling from Debtor's two Chapter 11 bankruptcy cases pending in 2011 through 2013, the tolling would be approximately two years and six

---

[5] Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of docket entries and documents filed in Debtor's prior bankruptcy cases filed in this court, indicating the filing and dismissal dates of these cases. *See In re E.R. Fegert, Inc.*, 887 F.2d at 957-958; *United States v. Wilson*, 631 F.2d at 119 (9th Cir. 1980); Russell, *Bankruptcy Evidence Manual*, § 201:5, *citing inter alia, In re Ranieri,* 598 B.R. at 452-453 and n. 1 (citations omitted) and *In re Faulkner,* 593 B.R. at 273 and n.2 (citations omitted).

1  months, meaning the collection statute of limitations would have only expired for a debt

2  from an obligation or liability arising from a written contract on or before April 5, 2009.

3  Debtor on his bankruptcy schedules filed on October 5, 2015 listed creditors

4  holding unsecured nonpriority claims incurred after April 5, 2009 for which the collection

5  statute of limitations would not have expired before the filing of Debtor's bankruptcy

6  petition in this case on October 5, 2015, and these creditors include the business debt

7  owed to Citibank, N.A., incurred in April 2011 (i.e., more than four years before the

8  petition date of October 5, 2015) in the amount of $50,953.00, the utility debt owed to

9  Financial Credit Network incurred in 2010 in the amount of $77.00 and the business

10  debt owed to Wells Fargo Bank N.A. incurred in 2010 in the amount of $22,742.00.

11  Schedule F – Creditors Holding Unsecured Nonpriority Claims, Docket No. 1 at 23-24.

12  Debtor's bankruptcy schedules listing these potentially dischargeable debts put the

13  trustee on notice of these debts when Debtor filed this bankruptcy case, and these

14  creditors remained on his bankruptcy schedules until Debtor filed amended schedules

15  on May 21, 2019 to delete them (Docket No. 393 at 15).[6]

16  While Debtor in his bankruptcy schedules listed creditors holding unsecured

17  nonpriority claims incurred before April 5, 2009, which may have been beyond the tolled

18  collection statute of limitations, including consumer debts owed to Discover Bank

19  incurred in 2002 in the amounts of $7,562.00 and $866.00 and consumer debt to

20  Western Federal Credit Union (now Unify Financial Credit Union) in the amount of

21  $1,472.00, most of Debtor's unsecured debts that he scheduled in his bankruptcy

22  petition were not unenforceable due to expired statutes of limitation as the evidentiary

23  record shows.  That is, the evidentiary record in this case indicates that eight listed

24  unsecured creditors (not including Discover or Unify) held unsecured nonpriority claims

25  of over $90,000 as scheduled by Debtor on his bankruptcy petition.  Only the unsecured

26

27  ───────────────────

28  [6] As discussed herein, Debtor apparently deleted these creditors from his amended bankruptcy schedules of May 21, 2019 as time-barred, but this would have been incorrect, given the tolling of the collection statutes of limitation from Debtor's prior bankruptcy cases.  Debtor does not explain why he deleted these debts from his amended schedules, and if they were not owed by him, why he listed them on his original bankruptcy schedules in the first place.

debts owed to Discover Bank and Western Federal Credit Union may have been time-barred by the collection statutes of limitation based on this record.  Debtor's unsworn email statement of January 29, 2016, which was attached as part of his July 22, 2016 declaration, referred to only two unsecured creditors, Discover and one other unnamed creditor, which may have been Western Federal Credit Union (or Unify).

While Discover Card and Unify Federal Credit Union were two of the only unsecured nonpriority creditors which filed proofs of claim in this case by the claims bar date, which they later withdrew, apparently because of the expired collection statutes of limitation, other unsecured creditors could have legally filed proofs of claims after the claims bar date and could have still received a distribution with timely filed claims if such creditors had not been given notice of the bankruptcy case under 11 U.S.C. § 726(a)(2)(C) or if such creditors had notice of the bankruptcy case, their distributions would be subject to a subordinated priority for filing late claims after the bar date pursuant to 11 U.S.C. 726(a)(3).  Just because there were no other unsecured creditors which timely filed claims does not necessarily mean that there were no other unsecured creditors to pay, or that all of Debtor's potentially dischargeable unsecured debts were statute-barred.  Debtor never filed any document in the case with evidence showing that the debts of all of the unsecured creditors listed on his bankruptcy schedules were time-barred by the collection statutes of limitations, so it is incorrect for him to assert that he had no potentially dischargeable unsecured debts as he has not shown that to be the case here.  It appears that Debtor had potentially dischargeable unsecured debts owed to creditors which for one reason or another chose not to file a proof of claim in the case, but he has not shown that for each of these creditors, they chose not to do so because the collection statute of limitations had expired.

As set forth in the trustee's final report filed on July 26, 2022 (Docket No. 611), the unsecured claims filed in this case included the unsecured priority claim of the California Franchise Tax Board filed in the amount of $3,976.14 and its unsecured nonpriority claim of $1,974.03 and the unsecured priority claim of the Internal Revenue

1  Service in the amount of $765.76, which might have been entitled to a distribution if

2  there had been sufficient funds after payment of administrative expense claims.

3  Unfortunately for the creditors in the case, the bankruptcy estate was administratively

4  insolvent due to the high cost of litigation on behalf of the trustee resulting in substantial

5  administrative expense claims, which were also unsecured claims to have been allowed

6  and paid to the extent possible pursuant to 11 U.S.C. § 502.  The court has already

7  ruled upon the reasonableness of the administrative expense claims consisting of the

8  trustee's statutory compensation under 11 U.S.C. § 326 and the compensation of his

9  professionals, his attorneys and his accountants, under 11 U.S.C. § 330, to which

10 Debtor objected, and the court had approved the administrative expense claims over

11 Debtor's objection, Debtor had moved for reconsideration, which was denied, and

12 Debtor appealed the court's rulings to the United States District Court, which later

13 dismissed his appeal.  Docket Nos. 594, 595, 597, 611, 612, 650, 654, 657, 659, 668,

14 677, 680, 681, 688, 811 (final fee applications of the trustee's professionals, the

15 trustee's final report, Debtor's objections thereto, Debtor's motion for reconsideration

16 and related papers, Debtor's notice of appeal and District Court's order dismissing

17 appeal).  Implicit in the court's rulings approving the trustee's final report and final fee

18 applications of the trustee and his professionals was the court's determination that the

19 administration of this bankruptcy case by the trustee was reasonable and appropriate,

20 though Debtor disagrees.  Debtor filed this voluntary Chapter 7 bankruptcy case, and in

21 accordance with statutory procedures, the trustee was appointed to serve as the

22 Chapter 7 trustee, and as the Chapter 7 trustee, the trustee was required to administer

23 the bankruptcy estate and carry out his duties as prescribed by the Bankruptcy Code,

24 11 U.S.C. § 704, which he did satisfactorily, meriting the approval of his final report and

25 the fee applications of the trustee and the professionals who assisted him.

26      Based on Debtor's arguments in his motion, the trustee was allegedly put on

27 notice that there were no collectible unsecured debts by Debtor's declarations of June

28 3, 2016 and July 22, 2016, though Debtor argues that his email dated January 29, 2016

gave notice, but that was only to his former bankruptcy attorney before Debtor's declaration of June 3, 2016 was filed.  By June 3, 2016, the trustee had incurred substantial legal expense in litigating contested matters with Debtor, including the filing and prosecuting of the adversary proceeding filed on January 21, 2016 for turnover of the real estate sales commissions which were assets of the bankruptcy estate and revocation of discharge based on misrepresentations made by Debtor on his bankruptcy schedules, filing objections to Debtor's claimed personal property exemptions, which the trustee contended were excessive and filing opposition to Debtor's motion to convert the case to Chapter 13, which the trustee contended was in bad faith, and these contested matters proceeded to trial, which resulted in substantial expense to the estate as administrative expense claims.  See Final Fee Application of Trustee's Attorneys, Docket No. 594, filed on April 27, 2022.  The trustee substantially prevailed in these contested matters as the court granting the trustee's claims for relief for turnover of the real estate sales commissions, which had been excessively claimed as exempt, for revocation of Debtor's discharge based on misrepresentations made on his bankruptcy schedules and sustaining the trustee's opposition to Debtor's motion to convert the case to Chapter 13 on grounds that Debtor did not have evidence of regular income to fund a Chapter 13 plan.  As discussed above, Debtor's declarations of June 3, 2016 and July 22, 2016 did not sufficiently put the trustee on notice that Debtor's scheduled unsecured debts were stale or uncollectible based on the expiration of the collection statutes of limitation.  Even if Debtor's June 3, 2016 and July 22, 2016 declaration had given such notice, unfortunately, the trustee had to engage in this substantial litigation, resulting in enormous legal expense by this time.  See Trustee's Final Report, Main Bankruptcy Case Docket No. 611.

Based on the foregoing, Debtor has not met his burden of showing whether by a preponderance of the evidence or by clear and convincing evidence that the trustee committed a fraud on the court on grounds that he made a false declaration in support of his motion for turnover of assets and administered the bankruptcy estate in this case

1    after being put on notice that Debtor had no collectible unsecured debts as both of

2    these allegations of Debtor are unfounded. Moreover, Debtor has not shown that this is

3    a case of "injustices . . .sufficiently gross to demand a departure' from rigid adherence

4    to the doctrine of res judicata." *United States v. Beggerly*, 524 U.S. at 46, as he has not

5    shown any fraud on the court by the trustee by a preponderance of the evidence, let

6    alone, by clear and convincing evidence, for the court to exercise its discretion to relieve

7    him from the final judgment in this adversary proceeding.

8        As to Debtor's former bankruptcy attorney, as the court noted above, vacating a

9    judgment "restores the balance and fairness between the parties **by removing the**

10    **benefit gained by the party that committed the fraud**." *In re Levander,* 180 F.3d at

11    1119 (emphasis added). In this case, as Debtor argues in his motion to vacate, his

12    former bankruptcy attorney is responsible for committing "fraud upon the court" by

13    fraudulently failing to present evidence to the court and the trustee regarding his alleged

14    lack of collectible unsecured debts. Motion to Vacate, Docket No. 247 at 23-30. As to

15    the alleged failure to present evidence to the court and the trustee, however, there was

16    no benefit gained by the party that allegedly committed the fraud, Debtor's former

17    bankruptcy attorney, or Debtor on whose behalf the attorney had acted, in the notice of

18    court's findings of fact and conclusions of law for revocation of discharge, Docket No.

19    124, on in the final judgment, Docket No. 170, and thus, there is no purpose in

20    protecting the integrity of the court setting aside its findings of fact and conclusions of

21    law or its final judgment with respect to alleged acts of Debtor's former bankruptcy

22    attorney. While the trustee is the party who gained the benefit of the court's ruling, as

23    discussed above, there was no fraud on the court as to the trustee. Whether there was

24    fraud on the court with respect to the acts of Debtor's former bankruptcy attorney in not

25    presenting evidence to the court and the trustee, which the court doubts, it would not

26    protect the integrity of the court to set aside the decision revoking Debtor's discharge in

27    favor of the trustee as the trustee is not culpable of any misconduct that may be

28    attributed to Debtor's former bankruptcy attorney, even if the court was so inclined to

1    find, which it is not.

2    **Trustee's Opposition**

3    As previously stated, the trustee opposes the motions because: (1) they are

4    "unintelligible and are nothing more than codswallop;" (2) they seek reconsideration of a

5    final order without cause; (3) they do not meet the pleading standard of Federal Rule of

6    Civil Procedure 8(a); and (4) they are without evidentiary foundation.  Docket No. 283 at

7    1-2.

8    Regarding the trustee's argument that the motions to remove him should be

9    denied on grounds that the motions are "unintelligible" and "nothing more than

10   codswallop."  The Merriam-Webster Dictionary defines "unintelligible," an adjective, as

11   follows:  "unable to be understood or comprehended.  Merriam-Webster Online

12   Dictionary (accessed on April 16, 2024 at  https://www.merriam-

13   webster.com/dictionary/unintelligible).  The Merriam-Webster Dictionary defines

14   "codswallop," a noun as follows: "words or ideas that are foolish or untrue:

15   NONSENSE."  *Id.* (accessed on April 24, 2024 at https://www.merriam-

16   webster.com/dictionary/codswallop).  Having reviewed Debtor's motions, the court does

17   not consider them to be completely unintelligible as the court could make out the

18   meaning of Debtor's contentions, though it was challenging to do so.  Having reviewed

19   Debtor's motions, the court also does not consider them to be codswallop, just based on

20   erroneous reasoning as discussed above.  The court will deny the motions not because

21   they are unintelligible and are codswallop, but simply because they are based on

22   erroneous arguments as discussed above.

23   Regarding the trustee's other opposition arguments, the court agrees with the

24   trustee that the motions should be denied because they seek reconsideration of a final

25   order without cause and they are without evidentiary foundation for the reasons

26   discussed above in this memorandum decision.  However, the court disagrees with the

27   trustee's argument that the motions should be denied because they do not meet the

28   pleading standards of Federal Rule of Civil Procedure 8(a) since except in limited

1   circumstances, motions are not regarded as pleadings, and thus, Rule 8(a) is

2   inapplicable to motions. *Parker v. United States,* 110 F.3d 678, 682 and n. 9 (9th Cir.

3   1997) (citation omitted).

4        **Conclusion**

5       For the foregoing reasons, the court will deny Debtor's motions to revise and/or

6   vacate Docket No. 124 for lack of merit.  A separate order denying Debtor's motions will

7   be filed and entered concurrently herewith.

8       IT IS SO ORDERED.

9                                ###

Date: May 1, 2024

_____

Robert Kwan
United States Bankruptcy Judge